(No. 47512.–

OSCAR PATRICK, Appellee, v. BURGESS-NORTON MANUFACTURING COMPANY, Appellant.

*Opinion filed May 28, 1976.–Rehearing denied June 28, 1976.*

RYAN, UNDERWOOD and CREBS, JJ., dissenting.

Gates W. Clancy, of Geneva (James S. Mills, of counsel), for appellant.

John G. Phillips, of Chicago (Sidney Z. Karasik, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The case of Oscar Patrick, plaintiff, against defendant, Burgess-Norton Manufacturing Company, seeking to recover damages for personal injuries allegedly resulting from defendant's violation of the Structural Work Act, was set for trial in the circuit court of Kane County on February 13, 1973. Plaintiff and his attorney did not appear. The circuit court impaneled a jury, and the case proceeded to trial. The jury returned a verdict in favor of defendant on which the circuit court entered judgment. (*Cf. Williams v. Pearson*, 28 Ill. App. 2d 210, *aff'd*, 23 Ill.2d 357.) Within 30 days plaintiff filed a verified petition to set aside the judgment, a hearing was held, and the petition was denied. The appellate court reversed (25 Ill. App. 3d 1083), and we granted defendant's petition for leave to appeal.

Although described as a "petition" plaintiff's pleading is more appropriately to be treated as a motion filed under section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1973,

ch. 110, par. 50(5)), which provides: "The court may in its discretion, before final order, judgment or decree, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable." In *People ex rel. Reid v. Adkins*, 48 Ill.2d 402, 406, the court said: "Under this section, it is no longer necessary that such relief be sought on the precise grounds that there is a meritorious defense [claim] and a reasonable excuse for not having timely asserted such defense. The overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits."

The petition to set aside the judgment, subscribed and sworn to by John G. Phillips, plaintiff's attorney, stated that the case had not been set for pretrial and that on December 20, 1972, he asked Gates W. Clancy, one of defendant's attorneys, to present a motion to place the cause on the trial calendar "by agreement of the parties." It appears that Mr. Phillips' office is in Chicago and that Mr. Clancy maintains offices both in Chicago and Geneva. Mr. Clancy presented the motion on December 26, 1972, and thereafter plaintiff's counsel received notice from the court that there would be a trial call on February 5, 1973, and that his case was number 90 on the trial call of 91 cases. Sometime prior to February 2, 1973, he saw Mr. Clancy in the courthouse in Chicago and Mr. Clancy said that he had approximately 13 cases on the trial call for February 5, 1973, and he "spoke further to Mr. Clancy about attempting to make service upon the Third Party Defendant, which was a dissolved corporation, and the problems incidental thereto, and agreeing with Mr. Clancy in general not to seek an immediate trial date for this cause."

In the verified petition Mr. Phillips stated that on February 2, 1973, he called Mr. Clancy's office in Geneva

and spoke with Mr. James S. Mills, an attorney associated with Mr. Clancy, who was going to appear for defendant at the trial call, and asked him to also appear for him at that time. He stated further that he had received a letter from the office of Gates W. Clancy dated February 5, 1973, signed by James S. Mills, and a second letter from that law office dated February 6, 1973, signed by Wendell W. Clancy. One of the letters discussed the obstacles to a proposal apparently made by plaintiff's attorney concerning a procedural aspect of a third-party proceeding, and the other contained copies of a "Notice to Produce." In neither of these letters was there any mention made of the February 13, 1973, trial setting. On February 12, 1973, Phillips mailed to Gates W. Clancy requests for supplemental answers to interrogatories and a motion to produce at the time of trial.

The petition stated further that the first notice that plaintiff's attorney received that the case was set for trial on February 13, 1973, was when an associate in his office called him at 11:30 a.m. on February 13, during a recess in another case which he was trying in Chicago. The trial in which he was then engaged had started on February 9 and was not concluded until February 17. His associate told him that Judge Peterson was holding this matter for trial at 1:30 p.m. that day. He attempted several times to call Judge Peterson in Geneva and was informed that he was out to lunch. He reached the judge at approximately 1:25 p.m., "explaining that he was the only attorney in the case and that he was engaged on trial, and that Mr. Norman Peters, the referring attorney, was semi-retired, 80 years of age, and not having tried a jury case for quite some time." Judge Peterson nonetheless insisted that Phillips be there or engage someone else to be there.

At the hearing on the petition to set aside the judgment, Mr. McLaughlin of Phillips' office appeared for the plaintiff. He recited the matters set forth in the petition and asked the court "to reinstate this matter for a

trial on a date certain approximately two weeks hence at which time we can and will be ready to proceed with witnesses and the plaintiff." Mr. Cunningham, of Mr. Clancy's office, who appeared for defendant at this hearing, said the court was familiar with the case and then related his telephone conversation with Phillips and his message to a girl in Phillips' office. He said:

> "It relates to a conversation [between Gates W. Clancy and Phillips] apparently had in the hallway of Cook County Courthouse, which I am not a party to, and I don't know what the content of that conversation was.
>
> However, I did personally have a conversation on the phone on approximately February 2nd or February 1st of 1973 with a gentlemen who identified himself as being Mr. John Phillips and who related to me that he had some kind of a conversation with Mr. Clancy about continuing the trial. And I indicated to him I didn't know what the conversation was, but that due to the age of this case that I would doubt that the Court would continue the matter, however, I would make his feelings known at the time of the trial call.
>
> I attended the trial call on February 5, 1973. And when the case was called as No. 90, I appeared and answered on our part and on behalf of Mr. Phillips and I informed the Court that Mr. Phillips would like the case continued. The Court set the date of February 13th for the trial.
>
> On the same afternoon, I placed a telephone call to Mr. Phillips' office and I talked with a girl there who said Mr. Phillips was not in, no attorneys were available. And I told her that I had a message to relate to her, that a case was set for trial on the 13th of February out in Kane County, gave her the specifics with reference to the name of the case, and she told me that she would relay the message."

The circuit court stated that the requests of February 12 for supplemental answers to interrogatories and the motion to produce at the time of trial "indicate to the Court that plaintiff's Counsel knew the pendency of the case and knew of the setting. *** And realizing that somebody had told Mr. Clancy there was a man in the

office who could come out here, we proceeded." The court then denied the petition to set aside the judgment.

Plaintiff argues that the delay in getting the case to trial was not attributable to him, nor does he seek to blame defendant for the long postponement. He contends that where an attorney has actually become engaged in trial of another matter he presents a just cause for a continuance and that the circuit court acted arbitrarily in refusing a short continuance on such a showing. He argues that default judgments are not favored and that the circuit court should be liberal in setting aside an *ex parte* judgment, on the overriding consideration that all parties have their day in court so that matters may be tried on the merits. Defendant, citing our Rule 231(f), which provides that "No motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay," contends that no sufficient excuse was shown for the delay in requesting a continuance. It argues that plaintiff's attorney either knew of the setting or could have called the clerk of the circuit court to learn what had transpired at the February 5 trial call, and that the circuit court did not err in denying the continuance.

Defendant's counsel complains bitterly about the years of delay in getting the case set for trial and the fact that plaintiff's attorney used defendant's attorney to make his court appearances. It is true that this case, which had been pending for a number of years, was not set for trial until February 13, 1973, but there is nothing in the record to show who or what caused this delay. If plaintiff was guilty of inexcusable delay, the circuit court had the inherent power, on the motion of defendant or its own motion, to dismiss this action for want of prosecution. The record shows that defendant's attorney cooperated in requesting that the case be set for trial. It contains, too, the affidavit of the circuit judge who conducted the February 5, 1973, master trial call in which he stated that

the manner of setting this case was no different than the manner of setting the other 90 cases on the call that day.

The record shows that plaintiff's attorney, on December 20, 1972, asked defendant's attorney to appear in court and have the case placed on the trial calendar. Defendant's attorney made this appearance and request on December 26, 1972, and the case was set for the master trial call on February 5, 1973. Mr. Cunningham, who appeared for defendant at the hearing on plaintiff's petition to set aside the judgment, stated at that time that he had appeared at the master trial call and advised the circuit court that plaintiff's attorney would like the case continued. The circuit court set the case for trial on February 13, 1973. On this record the question whether plaintiff's attorney exercised due diligence must be decided on the basis of what occurred from the time the case was set for trial on February 5, 1973. When the case was placed on the master trial call plaintiff's attorney received notice to that effect from the clerk of the circuit court. He was not present on February 5, 1973, when the case was set for February 13, 1973, and the clerk sent no notice of the setting. Although Mr. Cunningham stated that he called Mr. Phillips' office on February 5, and told the girl who answered that the case was set on February 13, Mr. Phillips denied that he was aware of the setting until the phone call of February 13, received while he was engaged in trial of another case. He received letters from the office of defendant's attorney, dated February 5 and 6, 1973, neither of which mentioned the date of trial. The petition to set aside the judgment was filed within the 30 days provided in section 50(5) of the Civil Practice Act. Defendant filed no counteraffidavits and offered no testimony at the hearing on the petition.

We agree with the appellate court that reversal of the judgment did not require that the circuit court have abused its discretion. As we said in *People ex rel. Reid v. Adkins,* 48 Ill.2d 402, "The overriding consideration now

is whether or not substantial prejudice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits." (48 Ill.2d 402, 406.) Applying that test, in denying plaintiff a brief continuance and in refusing to set aside the judgment upon reasonable terms and conditions (see section 50(5) of the Civil Practice Act), the circuit court erred. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN, dissenting:

The court's opinion holds that under section 50(5) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 50(5)) "reversal of the judgment did not require that the circuit court have abused its discretion," citing *People ex rel. Reid v. Adkins* (1971), 48 Ill.2d 402. I would call my colleagues attention to the following language of *Adkins*: "Because of the posture of this case, we are of the opinion that the trial court *abused its discretion* in failing to set aside its order ***." (Emphasis added.) 48 Ill.2d 402, 407.

The very language of section 50(5) of the Civil Practice Act vests discretion in the court: "The court may *in its discretion* *** set aside any final order, judgment or decree ***." (Emphasis added.)

It is well established that "where the trial court has the power of judicial discretion and exercises it without abuse, and within the scope of the law, such action will not be disturbed by the reviewing courts." *Whitney v. Madden* (1948), 400 Ill. 185, 190.

The language quoted above from the majority opinion is contrary to a long-accepted principle of appellate review which has been followed by both this court and the appellate courts of this State. See 2 Ill. L. & Pr. *Appeal and Error* sec. 761 (1953) and cases cited therein.

Furthermore, in a case requiring the exercise of

judicial discretion on review much weight is given to the judgment of the trial court. (*People ex rel. Kessinger v. Burrell* (1923), 308 Ill. 600.) Thus a court of review should not substitute its judgment for that of the trial court but should reverse only if the trial court abused the discretion which has been vested in it.

Under the circumstances of this case it cannot be said that the trial court abused its discretion in refusing to set aside the judgment for the defendant. The plaintiff's case was filed in 1959. Almost 14 years later, in December 1972, it was placed on the trial calendar. Plaintiff's counsel was given notice that there would be a trial call on February 5, 1973. At the trial call the case was set for trial on February 13, 1973. Defendant's counsel notified plaintiff's attorney's office that the case was set for trial on February 13, 1973. On that date, when plaintiff's attorney did not appear the judgment was entered for the defendant.

Plaintiff's attorney did not manifest a very great interest in the case. After it had been pending for almost 14 years, instead of moving to put it on the trial calendar, he asked the defendant's counsel to do so, and when he was notified of the trial call as stated above, no one from his office appeared; but instead he claims he called the defendant's attorney's office and asked that the defendant's attorney appear for him. Another attorney from the defendant's attorney's office did appear and told the judge that the plaintiff's attorney would like to have the case continued. The court then set the case for trial on February 13, and, as stated above, the attorney from defense counsel's office phoned plaintiff's attorney's office. Since no attorneys were in, the message was left with the girl that answered the telephone. It is difficult to see how much more accommodating the court and defense counsel could have been.

An attorney has a responsibility to "follow his cases." If he files a case in a county where he does not customarily

practice, he must realize that the entire calendar of that court cannot be rearranged for his convenience. It is an imposition on opposing counsel to ask them to answer calls and make motions on his behalf. In this case defense counsel did extend every courtesy to the plaintiff's attorney and even called his office and informed the woman who took the message of the trial setting. If the plaintiff's attorney never received this message, this breakdown of communications in his office cannot be blamed on the defendant's attorney or on the court. Plaintiff's attorney did not even call the clerk's office or the defendant's attorney after the trial call to ascertain if the case had been continued or if it had been set for trial.

The trial judge has a responsibility to this court and to the litigants to keep his calendar reasonably current, and it was not an abuse of his discretion to refuse to vacate the judgment.

UNDERWOOD and CREBS, JJ., join in this dissent.